S. C. LOVELAND CO., Inc., as owner of the BARGE LOVELAND 33
v.
UNITED STATES of America.
No. 481 of 1954.

United States District Court
E. D. Pennsylvania.
July 31, 1962.

Benjamin F. Stahl, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for libellant.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., for respondent.

GRIM, Senior District Judge.

Libelant contracted with the government (the Navy) to transfer by barge five picket boats from Salisbury, Maryland, to the Norfolk Naval Shipyard at Portsmouth, Virginia. In 1952 libelant's tug Gertrude Loveland sailed from Salisbury down Chesapeake Bay, towing behind her two barges with the five picket boats aboard, three in the front barge, Loveland 33, and two in the rear barge, Loveland 32. During the voyage the tug left the proper channel and ran aground. When the tug grounded, the barges, having no means of stopping, kept moving. The first barge, Loveland 33, rammed the grounded tug and was rammed in turn by the second barge, Loveland 32. The collision damage to Loveland 33 caused her to leak, and the tug, having gotten

herself off the ground, pushed 33 aground to keep her from sinking.[1]

After the accident the tug, leaving Loveland 33 grounded, proceeded to tow Loveland 32 to Portsmouth. Shortly thereafter temporary repairs were made to Loveland 33 and another tug towed her to Portsmouth. The picket boats on the barges, constituting the cargo, were not damaged.

Under these facts the parties have stipulated that:

"17. The facts present a situation to which the principles of general average apply."

Under this stipulation the only problem before the court is how much libelant is entitled to under the principles of general average contribution.

The parties have stipulated that the reasonable cost of the repairs to Loveland 33 for her collision damage alone was $5,000 and that the reasonable cost of the repairs to Loveland 33 due to her grounding was $2,500.

General average is defined in Star of Hope (1870), 9 Wall. 203, 76 U.S. 203, at page 228, 19 L.Ed. 638:

"General average contribution is defined to be a contribution by all the parties in a sea adventure to make good the loss sustained by one of their number on account of sacrifices voluntarily made of part of the ship or cargo to save the residue * * * or for extraordinary expenses necessarily incurred by one or more of the parties for the general benefit of all the interests embarked in the enterprise * * *

"Common justice dictates that where two or more parties are en-

---

1. The parties have stipulated that 33 was run aground to prevent sinking, although the captain of the tug, who was the only witness on the question of whether or not she would have sunk, testified in his deposition:

"Q If you had not run #33 ashore, she would have sunk, right?

"A I would say she would have went decks to the water.

"Q Could you have towed her in that condition?

"A No sir.

"Q But you did say that it would have continued to float, right?

"A I think she would have continued to float."

There is no evidence in the case as to whether or not 33's cargo, three picket boats, would have been damaged if 33 had sunk "decks to the water."

gaged in the same sea risk, and one of them, in a moment of imminent peril, makes a sacrifice to avoid the impending danger or incurs extraordinary expenses to promote the general safety, the loss or expenses so incurred shall be assessed upon all in proportion to the share of each in the adventure."

In the present case, the "extraordinary expense" incurred "to promote the general safety" of the two parties, namely the government (owner of the cargo) and the Loveland Company, was the damage caused to Loveland 33 by the grounding, by which she was prevented from sinking and by which her cargo of three picket boats was saved. The damage resulting from the collisions was not the sacrifice made for the benefit of the rest, but the fact that gave rise to the need for sacrifice.

The expense incurred resulting from repairs to the barge due to its damage from grounding "shall be assessed upon all in proportion to the share of each in the undertaking." Star of Hope, supra. Respondent contends that its share in the undertaking was the five picket boats and that they all should be taken into consideration as part of the undertaking and that the tug and both barges should be taken into consideration as libelant's part of the undertaking. Libelant, on the other hand, contends that only the value of Loveland 33 and its cargo of three picket boats should be taken into consideration, on the ground that only they were in peril. If libelant's contention were adopted respondent's liability would be increased considerably over its liability if respondent's contention were adopted.

■ On the question of damages the present case seems to be controlled by Sacramento Navigation Co. v. Salz, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927). In the Salz case the Sacramento Navigation Co. agreed to transport certain barley for Salz on a barge. The barge was towed by a Sacramento steamship in accordance with the terms of a contract of affreightment. The steam-

ship was operated negligently and caused the barge to collide with another ship so that the barley was swamped and destroyed. Salz sued to collect the value of his barley. The defense was that the situation was controlled by section 3 of the Harter Act, 46 U.S.C.A. § 192, which provides:

"If the owner of any vessel transporting merchandise or property to or from any port in the United States of America shall exercise due diligence to make the said vessel in all respects seaworthy and properly manned, equipped, and supplied, neither the vessel, her owner or owners, agent, or charterers, shall become or be held responsible for damage or loss resulting from faults or errors in navigation or in the management of said vessel * * *."

Salz contended that the Harter Act did not apply, since the negligence causing the injury was that of the steamship and the "vessel transporting" the cargo was in fact the barge, a separate vessel. The Supreme Court held, however, that for the purposes of the Act the barge and steamship together constituted "the effective instrumentality" for performing the contract between the parties (which the Court determined to be a contract of affreightment rather than a contract of towage) and that the Act applied to relieve the navigation company of liability.

Although the Harter Act is not involved in the present case, the question arises of whether the tug and barges should be considered as separate vessels or as one. On this issue the facts of the present case are analogous to those of the Salz case, and on that basis the tug and barges must be considered as one. Hence, for purposes of general average contribution, there must be taken into consideration the value, just before the collision, of the tug and two barges, and the value of the entire cargo: the five picket boats.

Libelant places great reliance on The J. P. Donaldson, 167 U.S. 599, 17 S.Ct. 951, 42 L.Ed. 292 (1897), for the proposition that there can be no general aver-

age contribution against a tug for damage to, or loss of, a tow of barges. In that case the owner of a tug contracted to tow two barges from Buffalo to Bay City, Michigan. On Lake Michigan a storm arose, and in order to prevent the tug from being driven ashore, her master cut the tow lines. The tug was saved, but the barges were lost. The Supreme Court held that on these facts the tug was not liable in general average for the loss of the barges because "the right of contribution is limited to the particular ship and cargo, and the sacrifice of one ship for the safety of another does not give rise to any claim of general average," 167 U.S. at p. 602, 17 S.Ct. at p. 952. This case is factually distinguishable from the case at bar, however, in the ownership of the vessels and in the type of contract involved. In the Donaldson case one party owned the tug and another the barges, and the contract was by A to tow the barges of B. Here tug and barges were all owned by libelant and the contract was not to tow barges but a contract of affreightment. The fact that the freight consisted of picket boats, which are themselves vessels, is totally immaterial.

The Salz case, supra, which deals with a similar factual and contractual situation, governs the present case. The Donaldson case is clearly distinguishable.

In accordance with the stipulation of the parties an interlocutory decree will be entered in favor of libelant for general average contribution for the grounding damage to the barge Loveland 33, the amount of grounding damage being $2,500. In determining the general average contribution there shall be taken into account the value of the entire cargo of five picket boats and the value of the tug Gertrude Loveland and both barges. The determination of values and resultant contributions shall be referred to a commissioner if the proctors for the parties are unable to agree thereon between themselves within 30 days after the entry of the interlocutory decree. The collision damage of $5,000 to Loveland 33 will not be included in the calculation of the liability of respondent.