**FARRELL OCEAN SERVICES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 77–363–Mc.

United States District Court, D. Massachusetts.

Sept. 24, 1981.

Leo F. Glynn, Glynn & Dempsey, Boston, Mass., for plaintiff.

H. Richmond Fisher, Trial Atty., Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

McNAUGHT, District Judge.

The United States Navy awarded a contract to Bromfield Shipyard, an operation of the Bromfield Corporation of Boston, in the fall of 1976, for the performance of repair work on four landing craft (LCM), then situated in Norfolk, Virginia. The contract provided that Bromfield was to convey the LCMs to Boston. (Item No. 992–02, sec. 1.1).

Bromfield, thereafter, contracted with the plaintiff, Farrell Ocean Services, Inc., a wholly owned subsidiary of Farrell Enterprises (Farrell), to deliver "four boats" by barge and tug to Boston for $22,500.00, half of which would be payable *fifteen days after delivery* and the other half *fifteen days after that*. Lashing and demurrage charges would bring the total to $29,349.00.

The defendant, United States, was not a party to the contract between Bromfield and Farrell. Neither did the United States issue any document by way of securing Bromfield's obligation to Farrell. At no time prior to the execution of the agreement between plaintiff and Bromfield did plaintiff speak to any representative of the United States, the owner of the "boats". The president of the plaintiff corporation testified, and I find, that when he entered into this contract with Bromfield, he was not apprehensive that Bromfield would not pay. He testified that he "felt that the government would see to it". This statement I find a bit difficult to interpret. I interpret it to mean that Mr. Farrell felt certain that the government would pay Bromfield and that Bromfield would turn over the money to him; and that if Bromfield did not do so, the government would exert pressure to force Bromfield to pay. At no time did he receive any assurance to that effect from anyone connected with the government, however. His was a gratuitous assumption in this regard.

The proposal from Farrell which was accepted by Bromfield (Exhibit 1) provided that the plaintiff did not have to provide "cargo insurance" on the "barge cargo". The LCMs, then, were described as barge cargo. The contract between Farrell and Bromfield did not mention any "lien upon a vessel". (Such language or the lack thereof here is an indication that the plaintiff looked to Bromfield, not to the vessels, for ultimate payment of the claims.)

Farrell, in accordance with its agreement, chartered an oceangoing barge, the LOCKWOOD NO. 1, from Lockwood Brothers, and a tug, the BAY KING, from Bay Towing Corp. to transport the "boats". The LCMs were loaded at Norfolk (Little Creek) and were delivered to Boston October 31, 1976. They were discharged beginning at 7:00 A.M. Monday, November 1st, and the job was completed at 3:00 P.M. on Tuesday, November 2, 1976. No notice of any lien was given when delivery of the cargo was made.

On November 1, 1976 Farrell invoiced Bromfield. No payment was received immediately. Bromfield eventually paid Farrell the sum of $5,000.00 toward the total monies owed. Demands were made for the remainder, but they were not met.

The out-of-pocket costs which were incurred by the plaintiff in carrying out its part of the contract with Bromfield included: charter hire of the barge LOCKWOOD NO. 1, $5,600.00; Hallerman Towing, $600.00; Bay Towing, $10,920.00; lashing, $4,000.00. These figures total $21,120.00.

The plaintiff estimated additional expenses of $1,850.00 by reason of visits by officers of the plaintiff and filing costs relating to the matter. Plaintiff says, therefore, that it has suffered an out-of-pocket expense of $22,970.00.

As noted hereinbefore, when the United States awarded its contract to the Bromfield Corporation, the United States did not require the contractor to post a performance bond. As of the time that the United States contracted with Bromfield Corporation and as of the time that Farrell contracted with Bromfield, Farrell was aware that the financial condition of Bromfield was "shaky". As testified to by Mr. Farrell, plaintiff had confidence in its ability to realize the sums promised to it by Bromfield since Bromfield would receive its money from the United States Government, Bromfield thereby being enabled to meet its obligations to Farrell.

At no time did Mr. Hugh Farrell or anyone from the plaintiff corporation or its parent discuss the contract with any representative of the United States. Any conversation that was had prior to entering into the contract with Bromfield consisted of conversations with people from Bromfield.

In November of 1976 Bromfield asked for a payment from the United States. In December of 1976 a Mr. Powers of the Bromfield Corporation presented to a Mr. Ray King, an employee of the United States Government, an invoice in support of Bromfield's request for a contract progress payment. The United States, in December of 1976, paid Bromfield a sum of at least $69,000.00 by way of a partial payment on the contract between the United States and Bromfield.

Mr. Farrell attempted to contact individuals in the Naval contracting office in Boston. At that time he was seeking to obtain payment for the services provided. He was inquiring whether funds had been given to Bromfield for distribution to the plaintiff. He spoke to a Mr. Mack. His conversation with Mr. Mack was brief, and amounted only to a reference by Mr. Mack of Mr. Farrell to a Mrs. Austin. On the followup telephone call to Mrs. Austin, Mr. Farrell was informed that she could not supply him with the information which he sought by way of inquiry.

At no time did Mr. Farrell or the plaintiff corporation receive any money from the United States in connection with the services provided to the four LCMs. Plaintiff commenced this suit seeking to recover the balance claimed in the amount of $24,349.00. At some point in the time period beginning December 16 and ending December 20, 1976, the partial payment (progress payment) was made by the United States to Bromfield.

This court has jurisdiction over the subject matter of this suit. The action was brought pursuant to the Suits in Admiralty Act, Title 46, §§ 741 through 752, and the Public Vessels Act, which is found in Title 46, U.S.C. §§ 781 through 790.

It is important to note that at the time that Bromfield was given the progress payment of 10% of the original contract, Bromfield had to base its request in part on the invoice from Farrell dated November 1, 1976.

The Suits in Admiralty Act, section 742, provides in part that in cases where, if a vessel were privately owned or if cargo were privately owned, a proceeding in admiralty could be maintained, then a nonjury proceeding in personam could be brought against the United States. Section 781 of the Public Vessels Act provides for the bringing of a libel in personam in admiralty against the United States for compensation for towage and salvage services, rendered to a public vessel of the United States.

The plaintiff here asserts two theories of recovery: (1) the Maritime Lien Act, 46 U.S.C. § 971 (creation of a maritime lien

against a vessel which has received services at the request of its owner); (2) a maritime lien under the General Maritime Law (a lien on cargo which has been carried and the freight has not been paid). The first theory concerns a lien upon a vessel, whereas the second concerns a lien on cargo.

First, the court concludes that the plaintiff is not entitled to recover on a theory based upon the Maritime Lien Act. The statute provides that any person who furnishes repairs, supplies, towage, use of dry dock or marine railway, *or other necessaries*, to any vessel . . . upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien.

■ Plaintiff asserts that the services provided to these LCMs fell within the definition of "furnishing repairs" or "furnishing other necessaries" to a vessel. The LCMs were still "vessels", although they were carried aboard a barge while being brought to Boston from Norfolk. While retaining the characteristics of a "vessel", each of them became a part of the cargo, and were referred to as "barge cargo" in the contract between Farrell and Bromfield. There can be no question that a necessary service was rendered to those vessels by way of transportation of them to Boston for further work to be done on them here.

■ The United States and Bromfield could have arranged for these vessels to have been towed from Norfolk. They contracted instead to have them brought up as barge cargo. If towage is the furnishing of a necessary to a vessel, it would seem that transportation of that same vessel by way of placing it on the deck of a barge also constitutes a "necessary" to the vessel. Although I do not agree with the contention of the plaintiff that the service provided to the LCMs constituted "furnishing repairs", I concur with plaintiff's conclusion that the service rendered to each of the LCMs in this case was one which was convenient and useful to each vessel, inured to each vessel's benefit, and gave rise, therefore, to a maritime lien. In *Payne v. SS Tropic Breeze*, 423 F.2d 236 (1st Cir. 1970), our Court of Appeals favored a broad interpretation of the phrase with which we are here concerned. That court stated that the appropriate test is "whether the goods or services in question were necessary to the continued operation of the vessel". Recovery under the Maritime Lien Act, however, cannot be had by plaintiff, since it waived its maritime lien. The plaintiff contracted to accept the credit of Bromfield. It looked to Bromfield for payment of the charges for transporting these vessels. Section 974 of Title 46 of the United States Code states in part that nothing in the chapter shall be construed to prevent the furnisher of necessaries from waiving his right to a lien. The evidence here indicates that the credit of the vessel itself was not relied upon by the plaintiff to secure payment for the transportation. By way of contract Bromfield assumed responsibility for the payment to Farrell. Indeed, Bromfield made a partial payment to Farrell of $5,000.00. Of importance also is the fact that before plaintiff sent its November 1 invoice to Bromfield it had no contact whatever with anyone from the Navy concerning the payment of Bromfield's obligation. The proof in this case points positively to the conclusion that although a maritime lien may have existed on each of the LCMs, the right to that lien was waived. *W. A. Marshall and Co. v. The Steamship President Arthur*, 279 U.S. 564, 49 S.Ct. 420, 73 L.Ed. 846 (1928). The intention of the plaintiff to look elsewhere than to the vessels for payment for its services is clear on the evidence.

■ The second question for resolution is whether the plaintiff is entitled to a maritime lien on the "barge cargo" (the LCMs) which were discharged in Boston. Plaintiff's trial memorandum, at page 15, contained the sentence: "It is black letter law that when cargo and vessel come together or are married during the transport each entity has rights against the other." Defendant's memorandum of law reads, in part, at page 1: "The fact that the freight consisted of LCMs which are themselves vessels is totally immaterial to its classifica-

tion as freight. *See S.C. Loveland Co., Inc., as owner of the Barge Loveland 33 v. United States,* 207 F.Supp. 450, 453 (E.D.Pa. 1962)." The parties and the court, then, are in accord with respect to the proposition that on the facts in the case at bar, by virtue of the General Maritime Law, the vessel had a lien against the cargo for the payment of freight. Such a lien depends upon possession, and where cargo is unloaded and delivered to the consignee without restriction, the lien is lost. The courts, as both parties have stated in their briefs, look to "the substance and good sense of the transaction" in order to determine whether there has been a waiver of such a lien. *Bulkley v. Naumkeag Steam Cotton Co.,* 65 U.S. (24 How.) 386, 16 L.Ed. 599 (1860). The contract in this case between Farrell and Bromfield contained a provision inconsistent with the exercise of a lien: payment for the freight to be made at a date subsequent to delivery. *See The Maggie Hammond v. Moreland,* 76 U.S. (9 Wall) 435, 19 L.Ed. 772 (1870). Mr. Farrell himself testified that he expected payment from Bromfield and that the government would "see to it". If Mr. Farrell expected payment from Bromfield, he expected that the money would come from the United States, and such payment could be made only subsequent to delivery of the LCMs.

The court concludes that the evidence points to and requires a conclusion of waiver of a cargo lien. There was no notice of lien given at the time of delivery of the cargo. There was no declaration of intention to hold the cargo liable for payment of the freight.

Judgment for the defendant.