**MARINE COATINGS OF ALABAMA, INC., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 84–0958–BH–C.**

United States District Court, S.D. Alabama, S.D.

April 9, 1987.

**820**

I. David Cherniak, K.W. Michael Chambers, Mobile, Ala., for plaintiff.

Edward J. Vulevich, Jr., Asst. U.S. Atty., Mobile, Ala., Thomas L. Jones, Civ. Div., Torts Branch, Dept. of Justice, Washington, D.C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAND, Chief Judge.

This cause is before the Court on motions for summary judgment filed, respectively, by the plaintiff, Marine Coatings, Inc. and the defendant, the United States of America. The motions for summary judgment were filed following the remand of this action from the Eleventh Circuit Court of Appeals. The Eleventh Circuit reversed this Court's dismissal of this action for lack of jurisdiction and remanded the case to have the motion to dismiss treated as a motion for summary judgment. *Marine Coastings of Alabama, Inc. v. United States,* 792 F.2d 1565 (11th Cir.1986). For the reasons that follow, the Court concludes that there exist no genuine issues of material fact and that the Government's motion for summary judgment is due to be GRANTED.

## FINDINGS OF FACT

Plaintiff, Marine Coatings of Alabama, Inc. (MCI), is an Alabama corporation with its principal place of business in Mobile County, Alabama. MCI engages in various ship repair services. On August 15, 1984, MCI filed suit in this Court against the defendant, the United States of America, to recover money allegedly owed to MCI for repair services performed on three naval vessels. This action is brought pursuant to the Suits in Admiralty Act, 46 U.S.C. §§ 742 *et seq.,* the Federal Maritime Lien Act, 46 U.S.C. §§ 971 *et seq.,* Rule 9(h) of the Federal Rules of Civil Procedure, and Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. Jurisdiction is predicated on 28 U.S.C. § 1333.

In February of 1984, MCI was hired by Braswell Shipyards, Inc. (Braswell) to do repair work on three naval vessels in Charleston, South Carolina. The USNS NEOSHO is a fleet tanker with the Navy Military Sealift Command. The YRST-2 is a naval salvage vessel. The SCHEREZADE is a mine warfare training vessel.

Braswell is a party to two identical Master Ship Repair Contracts with the United States. One contract is with the Navy Superintendent of Shipbuilding in Charleston, South Carolina. The other contract is with the Navy Military Sealift Command in Bayonne, New Jersey. These Master Contracts authorize Braswell to effect repairs on government vessels on a periodic job-by-job basis. The contracts make Braswell responsible for furnishing the materials, labor, and services necessary to complete specific jobs, but Braswell is permitted to hire subcontractors to perform the repair work. The Master Contracts do not, however, purport to make Braswell an agent of the Government. All work done is subject to inspection and approval by the Government.

MCI performed the requested repairs on all three vessels. The work was performed subject to the supervision and inspection of representatives of Braswell, naval officers, and government inspectors. On May 22, 1984, MCI submitted to Braswell an invoice for the repairs performed. Braswell failed to pay. On July 20, 1984, MCI wrote to the Military Sealift Command and the Superintendent of Shipbuilding, submitting formal notice of its claims for repair work performed and reserving the right to file suit against the Government pursuant to 46 U.S.C. §§ 741, 742, and 971.

On July 23, 1984, MCI filed suit against Braswell for the amounts owed. On August 13, 1984, Braswell filed a petition in bankruptcy. On August 17, 1984, MCI filed the present action against the United States. MCI later filed a claim in bankruptcy against Braswell for the cost of the repairs.

The United States paid Braswell for all monies due to Braswell under the Master Contracts, except for a limited disputed portion. MCI has received no payment for the work performed from either Braswell or the Government.

## JURISDICTION

Maritime actions concerning vessels owned or operated by the United States must be brought through either the Suits in Admiralty Act, 46 U.S.C. §§ 741 *et seq.*, or the Public Vessels Act, 46 U.S.C. §§ 781 *et seq.* Section 2 of the Suits in Admiralty Acts provides that "[i]n cases where if such vessel were privately owned or operated ... a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States...." 46 U.S.C. § 742. In contrast, section 1 of the Public Vessels Acts provides that "[a] libel in personam in admiralty may be brought against the United States ... for damages caused by a *public vessel* of the United States, and for compensation for towing and salvage services, including contract salvage, rendered to a public vessel of the United States...." 46 U.S.C. § 781 (emphasis added).

The in personam action at bar was brought under § 2 of the Suits in Admiralty Act on the theory that MCI could have maintained an in rem action on a maritime lien if the vessels in question had been privately owned or operated. The Government maintains that the vessels are public vessels and, therefore, that any action must be brought under the Public Vessels Act. The Government further argues that such an action, to the extent that it is predicated on a maritime lien theory, is barred by § 8 of the Public Vessels Act.

There are at least four possible answers to the questions of whether the Court has jurisdiction over MCI's claim and, if so, on what basis. First, if the vessels in question are not public vessels, then MCI's claim is properly before the Court under the Suits in Admiralty Act. Second, if the vessels are public vessels, the claim may still be cognizable under the Suits in Admiralty Act to the extent that the claim is beyond the scope of the Public Vessels Act. *See United States v. United Continental Tuna Corp.,* 425 U.S. 164, 180–81, 96 S.Ct. 1319, 1328, 47 L.Ed.2d 653 (1976). Third, the claim may fall under the Public Vessels Act to the extent that § 2 of the Suits in Admiralty Act, on which the claim is based, is incorporated into the Public Vessels Act by § 2 of the latter Act. Finally, as the Government argues, the incorporated claim may be barred entirely by § 8 of the Public Vessels Act. The Court will explore each of these possibilities.

■ The Court must first determine whether the vessel is a public vessel. No clear-cut definition of "public vessel" within the meaning of the Public Vessels Act has been established. Judicial decisions indicate that vessels with military functions are public vessels under the Public Vessels Act. *See United Continental Tuna Corp.,* 425 U.S. at 167 n. 1, 96 S.Ct. at 1322 n. 1 (naval destroyer is public vessel); *Blanco v. United States,* 775 F.2d 53 (2d Cir.1985) ("The term 'public vessel' was not intended to be limited to warships." *Id.* at 57. Tanker chartered by Navy Military Sealift Command is public vessel.); *Bradey v. United States,* 151 F.2d 742 (2d Cir.1945) (ship bound for theatre of war with cargo of coal and munitions is public vessel), *cert. denied,* 326 U.S. 795, 66 S.Ct. 484, 90 L.Ed. 483 (1946); *River and Offshore Services Company v. United States,* 651 F.Supp. 276 (E.D.La.1987) (tanker for Navy Military Sealift Command, operated by private company under contract with Navy, is public vessel); *Santos v. RCA Service Company,* 603 F.Supp. 943 (E.D.La.1985) (Navy support vessels are public vessels). *But see Calmar S.S. Corp. v. United States,* 345 U.S. 446, 73 S.Ct. 733, 97 L.Ed. 1140 (1953) (vessel chartered to United States,

carrying munitions on war mission, was "employed as a merchant vessel" under former provision of Suits in Admiralty Act).

A public vessel is defined at 46 U.S.C. § 2101(24) as a vessel that "(A) is owned, or demise chartered, and operated by the United States Government or a government of a foreign country; and (B) is not engaged in commercial service." Section 2101(5) states that " 'commercial service' includes any type of trade or business involving the transportation of goods or individuals, except services performed by a combatant vessel." The Court is not convinced, however, that this statutory definition is applicable to the Public Vessels Act. Congress is presently in the process of comprehensively revising Title 46 of the United States Code. *See* H.R.Rep. No. 338, 98th Cong., 113–115, *reprinted in* 46 U.S. C.A. Partial Revision Pamphlet 307–09 (1987), U.S.Code Cong. & Admin.News 1983, pp. 924–927. Section 2101 was enacted as part of this revision, which is, so far, incomplete. To the extent, however, that the Public Vessels Act, 46 U.S.C. §§ 781 *et seq.*, precedes § 2101 and is neither included in the revision nor repealed by the revisionary bill, this Court concludes that the existing case law on the meaning of public vessel under the Public Vessels Act should govern this decision. *See* H.R.Rep., *supra,* at 222, 226, U.S.Code Cong. & Admin.News 1983, at 1034, 1038.

Even if the definitions of § 2101 do apply to the Public Vessels Act, they are not necessarily inconsistent with existing case law. Naval support vessels may still be combatant vessels. Moreover, although they transport goods or individuals, naval support vessels are not necessarily involved in "trade or business" within the meaning of § 2101(5).

It is undisputed that the three vessels in the case at bar are naval support vessels. The USNS NEOSHO is a fleet tanker with the Military Sealift Command. The YRST–2 is a naval salvage vessel. The SCHEREZADE is a mine warfare training vessel. The Court holds that all three of these vessels are public vessels within the meaning of the Public Vessels Act.

■ The conclusion that these vessels are public vessels does not, however, eliminate the possibility of jurisdiction under the Suits in Admiralty Act. To the extent that the claim filed by MCI is not cognizable under the Public Vessels Act, it apparently falls within the purview of the Suits in Admiralty Act. While discussing the relationship between the two acts following the 1960 amendment deleting the "employed as a merchant vessel" requirement from the Suits in Admiralty Act, the Supreme Court, in *United Continental Tuna Corp., supra,* stated:

Congress' concern was that because of differences in the authorizational language of the Suits in Admiralty Act and the Public Vessels Act, some claims that would clearly have been within the jurisdiction of the district court if merchant vessels were involved had been held to be beyond the district court's jurisdiction [and within the jurisdiction of the Court of Claims under the Tucker Act] when public vessels were involved. Thus, some Courts had held that contract claims other than those expressly authorized by the Public Vessels Act were generally not cognizable under the Act.[1] Litigants with certain types of contract claims therefore faced the possibility that the appropriate forum would depend on the type of vessel involved. Congress' deletion of the "employed as a merchant vessel" proviso was clearly intended to remove such uncertainty as to

1. *See, e.g., Eastern S.S. Lines v. United States,* 187 F.2d 956, 959 (1st Cir.1951); *Continental Casualty Company v. United States,* 156 F.Supp. 942, 943–46, 140 Ct.Cl. 500 (1957). *But see United States v. Loyola,* 161 F.2d 126 (9th Cir.1947); *Thomason v. United States,* 184 F.2d 105 (9th Cir.1950); *Aliotti v. United States,* 221 F.2d 598 (9th Cir.1955); *Sinclair Refining Company v. United States,* 124 F.Supp. 628, 129 Ct.Cl. 474 (1954). *See generally* G. Gilmore & C. Black, *The Law of Admiralty* 984–85 (1975). The Supreme Court has twice declined to resolve the issue. *See Calmar S.S. Corp. v. United States,* 345 U.S. 446, 456, 73 S.Ct. 733, 738, 97 L.Ed. 1140 (1953); *United States v. United Continental Tuna Corp.,* 425 U.S. 164, 181 n. 21, 96 S.Ct. 1319, 1328–29 n. 21, 47 L.Ed.2d 653 (1976).

the proper forum *by bringing within the Suits in Admiralty Act whatever category of claims involving public vessels was beyond the scope of the Public Vessels Act.*

425 U.S. at 180–181, 96 S.Ct. at 1328 (footnotes omitted; footnote added; emphasis added).

MCI's claim is based on § 2 of the Suits in Admiralty Act, which permits in personam actions against the Government in cases where an admiralty action could have been maintained if the vessels had been privately owned or operated. MCI argues that it would have had an action in rem to enforce a maritime lien for services rendered if the vessels had been privately owned. Such a claim does not appear to fall within the scope of § 1 of the Public Vessels Act, which provides for in personam suits against the Government for "damages caused by a public vessel" and for "compensation for towing and salvage, including contract salvage." Thus, MCI's claim appears to fall within the "category of claims involving public vessels [that is] beyond the scope of the Public Vessels Act" and which should properly be brought under the Suits in Admiralty Act. *United Continental Tuna Corp.*, 425 U.S. at 180–181, 96 S.Ct. at 1328.

The Government argues that MCI's claim falls within the scope of the Public Vessels Act because claims under § 2 of the Suits in Admiralty Act against public vessels are incorporated into the Public Vessels Act through § 2 of the latter Act. Section 2 provides, in pertinent part, that "suits [under the Public Vessels Act] shall be subject to and proceed in accordance with the provisions of chapter 20 of this title [the Suits in Admiralty Act] or any amendment thereof, insofar as the same are not inconsistent herewith...." 46 U.S.C. § 782. The Government further argues that MCI's claim is barred by § 8 of the Public Vessels Act, which provides that "[n]othing contained in this chapter shall be construed to recognize the existence of or as creating a lien against any public vessel of the United States." 46 U.S.C. § 788.

Certain provisions of the Suits in Admiralty Act have been held to be incorporated into the Public Vessels Act by § 782. In *Canadian Aviator v. United States*, 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 (1945), the Supreme Court held that a provision of § 3 of the Suits in Admiralty Act, which authorized the application of in rem principles of liability to actions under the Act, was incorporated into the Public Vessels Act by § 782. *Id.* at 226–27, 65 S.Ct. at 645. Section 743 provides, in part, that "[i]f the libelant so elects in his libel, the suit may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained." 46 U.S.C. § 743. The Supreme Court concluded that § 743 was not inconsistent with the Public Vessels Act, thereby allowing the plaintiff corporation to bring its action under in rem principles as well as in personam principles of liability, provided that the government vessel was not subject to actual seizure or arrest. *Id.* at 226–28, 65 S.Ct. at 645–46.

Furthermore, the Supreme Court's holding that § 743 is consistent with the Public Vessels Act effectively rejected the circuit court's holding that § 788 bars theories of in rem liability under the act. *Id.* at 226, 65 S.Ct. at 645; *see also Canadian Aviator v. United States*, 142 F.2d 709, 714 (3d Cir.1944). The Supreme Court noted that the Suits in Admiralty Act had been held to permit actions based on both in personam and in rem principles of liability, in spite of § 741, which prohibits the arrest or seizure of vessels owned by the United States. *Id.* 324 U.S. at 220, 226–27, 65 S.Ct. at 642, 645; *see Eastern Transportation Company v. United States*, 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472 (1927); *see also*, 46 U.S.C. § 741. The Court stated that § 8 of the Public Vessels Act was essentially the same exemption provision as § 1 of the Suits in Admiralty Act. *Canadian Aviator*, 324 U.S. at 228, 65 S.Ct. at 646. Thus, § 788 prohibits only actual arrests or seizures of public vessels; it does not bar suits under the Public Vessels Act based on in rem principles of liability.

For these reasons, this Court holds that MCI's cause of action can be brought under the Public Vessels Act. The *Canadian Aviator* Court's incorporation of § 3 of the Suits in Admiralty Act into the Public Vessels Act, permitting in rem theories of liability to be asserted under the latter Act, appears to provide a sufficient basis for this holding. Additionally, this Court thinks that § 2 of the Suits in Admiralty Act should also be incorporated into the Public Vessels Act through § 782. Section 742 is no more inconsistent with the Public Vessels Act than § 743. Moreover, the incorporation of § 742 would insure that all actions against public vessels would be brought under the Public Vessels Act, subject to its special limitations.[2]

To summarize, the Court concludes that it has subject matter jurisdiction over the dispute at bar under either the Suits in Admiralty Act or the Public Vessels Act. If the vessels in question are not public vessels, then jurisdiction lies under the Suits in Admiralty Act. If the vessels are public vessels, as the Court has held, then jurisdiction lies either under the Suits in Admiralty Act, for a claim that is outside the scope of the Public Vessels Act, or under the Public Vessels Act, as a § 742 or § 743 claim incorporated by § 2 of the latter Act. To the extent that the claim is incorporated into the Public Vessels Act, it is not barred by § 8 of that Act. In any event, the Court has subject matter jurisdiction over the claim.

### THE MARITIME LIEN THEORY

■ MCI's cause of action is based on the theory that MCI could have maintained an in rem action to enforce a maritime lien against the vessels for which services were provided if they had been privately owned or operated. The Maritime Lien Act is found at 46 U.S.C. §§ 971 *et seq.* Section 971 provides as follows:

Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, *upon*

*the order of the owner of such vessel, or of a person authorized by the owner,* shall have a maritime lien on the vessel, which may be enforced by a suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

46 U.S.C. § 971 (emphasis added). Section 972 further provides:

The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is entrusted.

46 U.S.C. § 972.

To prevail on its maritime lien theory, MCI must establish that Braswell, the general contractor, was "authorized by the owner" to procure the services provided. General shipyard contractors, however, are not presumed to have authority from shipowners to procure repairs. *Marine Coatings of Alabama, Inc. v. United States,* 792 F.2d 1565, 1569 (11th Cir.1986); *The Juniata,* 277 F. 438 (D.Md.1922); *Sands Construction Company v. United Virginia Bank,* 1985 A.M.C. 1165, 1169 (E.D.Va. 1984); *Farwest Steel Corp. v. Barge Sea Span 241,* 1985 A.M.C. 404 (D.Or.1984) [Available on WESTLAW, 1984 WL 1908], *rev'd and remanded on other grounds,* 769 F.2d 620 (9th Cir.1985); *AAB Electrical Industries v. Control Masters, Inc.,* 1980 A.M.C. 1795 (E.D.La.1980). For a contractor to be "a person authorized by the owner" within the meaning of § 971, the contractor would essentially have to be an authorized *agent* of the owner of the vessel. *Sands Construction Company,* 1985 A.M.C. at 1167. *Benedict* states that "because it can rarely be shown that the contractor was acting not as a contractor but as the agent of the owner, a subcontractor will normally not be entitled to a lien since he extends credit to the contractor and not the ship." *2 Benedict on Admiralty,* § 38 n. 2 (7th Ed.1975).

---

2. *See United States v. United Continental Tuna Corp.,* 425 U.S. 164, 167–68, 96 S.Ct. 1319, 1322,

47 L.Ed.2d 653 (1976) (discussing special limitations imposed by Public Vessels Act).

The Court can find no evidence in the record that the Government intended to make Braswell its agent. The master ship repair contracts indicate only that the Government contracted with Braswell to perform an ongoing series of repairs to various government vessels under individual job orders. The master contracts required that Braswell furnish all necessary material, labor, and equipment to accomplish the work on the individual job orders. While the contract clearly anticipated the use of subcontractors on the part of Braswell, the contract does not purport to make Braswell the agent of the Government to contract on behalf of the Government with the subcontractors. Based on the case law cited above, this Court cannot conclude that Braswell was authorized by the Government to order repairs on behalf of the Government within the meaning of 46 U.S.C. § 971 merely because Braswell was permitted to subcontract the work.

Furthermore, it is clear that the regulations establishing who has authority to contract on behalf of the Government do not authorize general contractors to contract for materials and services on behalf of the Government. Under the applicable regulations, only "contracting officers" acting within the scope of their authority may enter into contracts on behalf of the Government. 32 C.F.R. § 1–407(a) (1984). Section 1–407(b)(1) indicates that the authority under subsection (a) is subject to only limited delegation, and does not authorize the delegation of such authority to contractors. Thus, the applicable law clearly does not permit contractors to contract on behalf of the Government. Of course, contractors are free to subcontract, but the subcontracts obligate only the contractor, not the Government. The subcontractor relies only on the credit of the contractor, and the Government holds the contractor liable for performance.

The regulations limiting contracting authority on behalf of the Government have the force and effect of law, and MCI is charged with knowledge of the law. Therefore, MCI knew, or was presumed to know, that Braswell did not have authority to contract on behalf of the Government.

MCI entered into a contract *with Braswell* to provide services *for Braswell.* MCI assumed the risk of extending credit to Braswell. If MCI did, in fact, rely on the credit of the Government, that reliance was misplaced. Braswell was not authorized to procure services on behalf of the Government within the meaning of 46 U.S.C. § 971, so MCI cannot maintain an action against the Government on a maritime lien theory.

In remanding this case to this Court for summary judgment proceedings, the Eleventh Circuit Court of Appeals cited three cases for the proposition that "in certain situations contractors may be authorized by the owner to procure repairs and supplies from contractors." *Marine Coatings of Alabama v. United States,* 792 F.2d 1565, 1569 (11th Cir.1986) (citing *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.,* 310 U.S. 268, 278–80, 60 S.Ct. 937, 942–43, 84 L.Ed. 1197, 1203–04 (1940); *Farrell Ocean Services, Inc. v. United States,* 524 F.Supp. 211, 214 (D.Mass.1981); *aff'd in part, rev'd in part on other grounds,* 681 F.2d 91 (1st Cir.1982); *Jan C. Uiterwyk Co. v. MV MARE ARIBICO,* 459 F.Supp. 1325, 1331 (M.Md.1978)). After reviewing these cases, however, it appears to this Court that the cases do not support the proposition asserted. *Dampskibsselskabet Dannebrog* and *MV MARE ARIBICO* involve *charterers,* not shipyard contractors. The Court in *Dampskibsselskabet Dannebrog* held that time charterer was "intrusted with the vessel's management" within the meaning of 46 U.S.C. § 972, so that the charterer's purchase of fuel gave rise to a maritime lien against the vessel in the absence of a prohibition of liens provision in the charter party. Similarly, the court in *MARE ARIBICO* held that the purchase of necessaries for a vessel by a space charterer gave rise to maritime liens against the vessel. It is worth noting that this decision was based, in part, on a finding that relevant documents referred to the space charterer as "ship's agent." *MV MARE ARIBICO,* 459 F.Supp. at 1331. Neither of these cases, however, appears pertinent to shipyard contractors. As previously indi-

cated, the case law relevant to shipyard contractors demonstrates that they do not fall within the list of persons in § 972 that are presumed to have the owner's authority to bind the vessel. *The Juniata*, 277 F.2d at 440–41 (D.Md.1922); *Sands Construction Company*, 1985 A.M.C. at 1167.

*Farrell Ocean Services* involved the question of whether towing services are "other necessaries" within the meaning of 46 U.S.C. § 971. The court answered the question in the affirmative, but subsequently found that any lien had been waived. The case is factually similar to the case at bar only because it involved the Government, a contractor, and a subcontractor that ultimately provided the towing service. The Court never addressed, as a matter of law, the issue of whether or not the contractor was authorized by the Government (the owner) to procure the towing services from a third party on behalf of the Government. The court's findings of fact on that issue, however, clearly indicate that the subcontractor looked only to the contractor for payment of the claims. 524 F.Supp. at 212–13. The Court in *Ferrell Ocean Services* should have denied the lien based on that finding, but inexplicably failed to do so and resolved the matter on other grounds. The issue was not raised or addressed on appeal. *Farrell Ocean Services, Inc. v. United States*, 681 F.2d 91 (1st Cir.1982).

For the reasons stated, this Court concludes that Braswell was not authorized by the Government to contract on behalf of the Government for repairs to the three vessels in question. Thus, MCI would not be entitled to maritime liens against the vessels if they were privately owned and cannot pursue an in personam action against the Government based on that theory.

## THE CONTRACT DISPUTES ACT

Even if MCI did have a valid claim against the Government, MCI's failure to comply with the requirements of the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.*, would bar MCI from bringing the claim in this Court. This Act sets up certain administrative procedures that must be complied with before suit can be brought against the Government based on contracts with the Government. The Act applies to "any express or implied contract ... entered into by an executive agency for ... the procurement of services...." 41 U.S.C. § 602(a). Section 603 provides that "suits under section 609 of this title, arising out of maritime contracts, shall be governed by chapter 20 [Suits in Admiralty Act] or 22 [Public Vessels Act] of Title 46 as applicable, *to the extent that those chapters are not inconsistent with this chapter.*" 41 U.S.C. § 603 (emphasis added). Thus, it is evident that the Contract Disputes Act is applicable to maritime contracts with the Government. *See River & Offshore Services Company v. United States*, 651 F.Supp. 276, 280–81 (E.D.La. 1987).

Admittedly, actions based on maritime liens do not expressly fall within the scope of the Contract Disputes Act. However, maritime liens are traditionally based on underlying claims in tort or contract. *See* G. Gilmore & C. Black, *The Law of Admiralty* 587, 624 (1975). In the case at bar, MCI's lien theory is clearly based on an underlying contract theory. MCI could assert essentially the same right to recover from the Government by arguing that it had a contract for services with the Government made through the Government's alleged agent, Braswell. A person authorized by the owner to procure services within the meaning of 46 U.S.C. § 971 is basically an agent of the owner.

MCI should not be able to avoid complying with the Contract Disputes Act merely by stating its claim in such a way that the claim does not appear to fall within the Act. Since MCI's claim is essentially based on an underlying contract for services, the Court concludes that the Contract Disputes Act applies to the resolution of the claim.

Section 6(a) of the Act provides that "[a]ll claims by a contractor against the government *relating to a contract* shall be in writing and shall be submitted to the contracting officer for a decision." 41

U.S.C. § 605(a). Additionally, section 6(c)(1) provides:

> For claims of more than $50,000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

41 U.S.C. § 605(c)(1). It is undisputed that MCI has not complied with these provisions of the Contract Disputes Act. The letters of July 20, 1984, sent to the Military Sealift Command and the Superintendent of Shipbuilding, do not satisfy the requirements of the Act.

The submission of a certified claim to the contracting officer is a jurisdictional prerequisite to filing suit on the claim. *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed. Cir.1985); *W.M. Schlosser Co. v. United States,* 705 F.2d 1336 (Fed.Cir.1983); *Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1383–84 (Fed.Cir.1983). Because MCI has not filed a certified claim, this Court holds that it would lack jurisdiction to hear MCI's maritime claim even if it were valid.

### CONCLUSION

Based on the foregoing Findings of Fact and Conclusions of Law, the Court concludes that there is no genuine issue as to any material fact and that the defendant, the United States of America, is entitled to summary judgment as a matter of law. Accordingly, the defendant's motion for summary judgment is GRANTED. Plaintiff's motion for summary judgment is DENIED.

It is so ORDERED.